## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| AMERICAN DAIRY QUEEN CORPORATION, a Delaware corporation, | ) ) ) | Case No._____ |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR INJUNCTIVE RELIEF** |
| LIEPMAN RESTAURANTS, INC., a Texas corporation; MARK H. LIEPMAN, an individual; and TERESA H. LIEPMAN, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff American Dairy Queen Corporation ("ADQ"), as and for its Complaint against Defendants Liepman Restaurants, Inc. ("Liepman Restaurants"), Mark H. Liepman, and Teresa H. Liepman (collectively "Defendants"), states and alleges as follows:

### INTRODUCTION

1.      This action involves the breaches of multiple Operating Agreements between ADQ and Defendant Liepman Restaurants and breaches of the Personal Guarantees of the Operating Agreements executed by Mark and Teresa Liepman. Liepman Restaurants is a former DAIRY QUEEN® franchisee that owned and operated 19 DAIRY QUEEN® restaurants across Texas, Louisiana, Arkansas, and Oklahoma pursuant to separate Operating Agreements. In early 2018, Defendants notified ADQ that, due to certain financial difficulties, they were exploring closing some or all of their DAIRY QUEEN® restaurants, as well as considering a Chapter 11 reorganization. Over the course of 2018, ADQ assisted Defendants as they sold 7 of their DAIRY QUEEN® locations.

2.      Notwithstanding ADQ's assistance, Defendants were unable to locate buyers for twelve of their DAIRY QUEEN® restaurants. During the period August 15, 2018, through

1

January 4, 2019, ADQ terminated twelve of the Operating Agreements after Liepman Restaurants abandoned its DAIRY QUEEN® restaurants and ceased operation without ADQ's approval in violation of the Operating Agreements. ADQ now seeks to recover past due fees, liquidated damages, and lost future profits in excess of $640,000.00, plus attorneys' fees and costs, as allowed under the terms of the Operating Agreements and Personal Guarantees.

3.    Following the terminations of the Operating Agreements, ADQ discovered that Defendants continue to use and associate themselves with the DAIRY QUEEN® and DQ GRILL & CHILL® trademarks, trade names, and numerous other trademarks and service marks that are licensed for use in DAIRY QUEEN® and DQ GRILL & CHILL® restaurants (collectively "DAIRY QUEEN® Marks" or "Marks") in violation of the Operating Agreements and federal trademark law. Defendants are also brazenly operating competing businesses at the very sites of four of their former DAIRY QUEEN® restaurants, using the deceptively similar "Dairy Mark" and "Wizzzards" trade names, in contravention of the Operating Agreements' non-compete provisions and federal trademark law.

4.    As a result of Defendants' unlawful infringement and breaches of their post-termination obligations under the Operating Agreements and Personal Guarantees, ADQ is suffering and will continue to suffer irreparable harm. To prevent any further harm, ADQ seeks an immediate and permanent injunction requiring Defendants to: (a) cease and desist from their unlawful infringement upon the Marks; (b) cease and desist from operating their competing businesses; and (c) comply with their post-termination obligations under the Operating Agreements. ADQ also seeks monetary damages related to Defendants' brazen and unlawful conduct.

## PARTIES

5.      ADQ is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located at 8331 Norman Center Drive, Bloomington, Minnesota. ADQ and its affiliates sell and support DAIRY QUEEN® franchises throughout the United States, Canada, and 24 other countries.

6.      Defendant Liepman Restaurants, Inc. ("Liepman Restaurants") is a Texas corporation with its principal place of business located at 602 East Main Street, San Augustine, Texas.

7.      Defendant Mark H. Liepman is a citizen and resident of the state of Texas.

8.      Defendant Teresa H. Liepman is a citizen and resident of the state of Texas.

9.      Defendants Mark and Teresa Liepman are equal 50-percent shareholders of Liepman Restaurants, Inc.

## JURISDICTION AND VENUE

10.      This action primarily involves trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq.* It also involves breaches of twelve Operating Agreements and Personal Guarantees between ADQ and Defendants.

11.      This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331, 1338 and 1367.

12.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District.

13.      This Court has personal jurisdiction over the Defendants because they are citizens of Texas who currently reside or are located in Texas, have conducted business within the state of Texas, have purposefully availed themselves of the privilege of doing business in Texas, have

intentionally done business in Texas, enjoying the privileges and benefits of Texas's laws and regulations, and have purposefully directed their actions toward Texas.

## FACTUAL BACKGROUND

**A.     The DAIRY QUEEN® Trademarks and Franchise System.**

14.     ADQ is the owner of the DAIRY QUEEN® and DQ GRILL & CHILL® trademarks, trade names, and numerous other trademarks and service marks that are licensed for use in DAIRY QUEEN® and DQ GRILL & CHILL® restaurants (collectively referred to as "DAIRY QUEEN® restaurants"). A true and correct copy of a list of several of ADQ's federally registered DAIRY QUEEN® Marks is attached hereto as Exhibit A.

15.     ADQ licenses the DAIRY QUEEN® Marks for use in DAIRY QUEEN® restaurants. Currently, more than 6,800 DAIRY QUEEN® restaurants exist and operate throughout the United States and abroad. DAIRY QUEEN® restaurants operate under operating agreements with ADQ or one of ADQ's territorial subfranchisors.

16.     The name DAIRY QUEEN® was originated by ADQ's predecessor, McCullough's Dairy Queen, in 1940. Since its origination, the DAIRY QUEEN® Marks have been used continuously by ADQ, its predecessors, and those that ADQ and its predecessors have franchised or licensed to use them.

17.     The DAIRY QUEEN® Marks have been used in connection with the sale of soft-serve, frozen and semi-frozen dairy products, frozen and semi-frozen drink products, cooked food products, and other products and services throughout the United States and in several foreign countries. One of the most popular and well-known menu items at DAIRY QUEEN® restaurants is the BLIZZARD® treat, a required core menu item at all DAIRY QUEEN® locations consisting of soft serve ice cream blended with fruit, nuts, candy pieces, and other flavorings. ADQ has used its BLIZZARD® mark in commerce exclusively and extensively for

more than 71 years, and BLIZZARD® has been used in connection with the current form of ADQ's BLIZZARD® treat for over 32 years throughout the United States and abroad.

18. ADQ and its predecessors have invested millions of dollars in advertising and promoting the DAIRY QUEEN® Marks throughout the United States, including the states of Texas, Louisiana, Arkansas, Oklahoma and abroad. As a result of the efforts and expenditures of ADQ and its predecessors, the DAIRY QUEEN® Marks have become associated in the minds of the consuming public with uniform products of consistently high quality, sold in clean and attractive stores, and operated by persons following substantially identical operating methods and procedures. The Marks have also become distinctive identifiers of goods and services provided by DAIRY QUEEN® restaurants, widely recognized by the general consuming public, and symbols of consumer goodwill that provide value to ADQ.

**B.      The Operating Agreements and Personal Guarantees.**

19. Mark and Teresa Liepman are equal shareholders of Liepman Restaurants, a company that at one point owned and operated 19 DAIRY QUEEN® restaurants franchised restaurants across Texas, Louisiana, Arkansas, and Oklahoma.

20. During the period October 7, 1996 to March 31, 2010, Liepman Restaurants was granted or assigned all rights, title, obligations, and interest in twelve separate DAIRY QUEEN® Operating Agreements that are at issue in this action. These Operating Agreements granted Liepman Restaurants the right to own and operate twelve different DAIRY QUEEN® franchised restaurants in the states of Texas, Louisiana, Arkansas, and Oklahoma. The twelve Operating Agreements are collectively referred to as the "Operating Agreements."

21. A true and correct copy of the Benton, Louisiana Operating Agreement, executed on March 16, 1990 and assigned to Liepman Restaurants on May 1, 2008, is attached as Exhibit B.

22.     A true and correct copy of the Bossier City, Louisiana Operating Agreement, executed on March 20, 1986 and assigned to Liepman Restaurants on May 1, 2008, is attached as Exhibit C.

23.     A true and correct copy of the Mansfield, Louisiana Operating Agreement, executed on March 1, 2000 and assigned to Liepman Restaurants on March 31, 2010, is attached as Exhibit D.

24.     A true and correct copy of the Many, Louisiana Operating Agreement, executed on March 20, 1986 and assigned to Liepman Restaurants on March 31, 2010, is attached as Exhibit E.

25.     A true and correct copy of the Shreveport-40290 Operating Agreement, executed on March 20, 1986 and assigned to Liepman Restaurants on May 1, 2008, is attached as Exhibit F.

26.     A true and correct copy of the Shreveport-40291 Operating Agreement, executed on April 1, 2000 and assigned to Liepman Restaurants on May 1, 2008, is attached as Exhibit G.

27.     A true and correct copy of the Shreveport-40292 Operating Agreement, executed on March 20, 1986 and assigned to Liepman Restaurants on May 1, 2008, is attached as Exhibit H.

28.     A true and correct copy of the Vivian, Louisiana Operating Agreement, executed on April 1, 2000 and assigned to Liepman Restaurants on May 1, 2008, is attached as Exhibit I.

29.     A true and correct copy of the Zwolle, Louisiana Operating Agreement, executed on March 20, 1986 and assigned to Liepman Restaurants on March 31, 2010, is attached as Exhibit J.

30.     A true and correct copy of the De Kalb, Texas Operating Agreement, executed on March 29, 2001, is attached as Exhibit K.

31.     A true and correct copy of the Texarkana, Arkansas Operating Agreement, executed on May 16, 1991 and assigned to Liepman Restaurants on October 7, 1996, is attached as Exhibit L.

32.     A true and correct copy of the Idabel, Oklahoma Operating Agreement, executed on April 2, 1994 and assigned to Liepman Restaurants on January 26, 2000, is attached as Exhibit M.

33.     At or about the same time that Liepman Restaurants executed the Operating Agreements, Mark and Teresa Liepman each entered into a personal guaranty with respect to each of the Operating Agreements (collectively the "Personal Guarantees"). Pursuant to the Personal Guarantees, Mark and Teresa Liepman each individually guaranteed to ADQ that they would make full and prompt payment to ADQ of all fees, charges, payments, and amounts due or payable by Liepman Restaurants to ADQ under the Operating Agreements. The Liepmans further agreed that they would be personally bound by all of the terms, provisions, and conditions set forth in the Operating Agreements. True and correct copies of the Personal Guarantees are attached to the back of each of the Operating Agreements.

34.     Pursuant to the Facility Standards and Maintenance provisions of the Operating Agreements, Defendants were required to operate and maintain their Restaurants in accordance with ADQ's building, equipment and signage requirements, and maintenance schedules. (*See* Section 5.3 of Exs. B, C, D, E, F, H, J, L, and M and Section 5.C of Exs. D, G, I, and K.)

35.     Pursuant to the Fees and Reporting provisions of the Operating Agreements, Defendants agreed to pay ADQ certain License Fees and Sales Promotion Fees on a monthly basis in the amounts set forth in those Sections. (*See* Sections 9.1(ii)-(iii) of Exs. B, C, E, F, H, J, L, and M and Sections 9.B and 9.C of Exs. D, G, I, and K.)

36.     Defendants also agreed to pay ADQ interest and late fees on past due amounts pursuant to the Fees and Reporting provisions of the Operating Agreements. (*See* Section 9.6 of Exs. B, C, E, F, H, J, L, and M and Section 9.F of Exs. D, G, I, and K.)

37.     Pursuant to the Breach of Contract and Default provisions of the Operating Agreements, Defendants agreed that failure to (1) pay when due any amounts owed to ADQ and (2) abide by the DAIRY QUEEN® system standards and requirements each constitute events of default that entitle ADQ to terminate the Operating Agreements upon notice to Defendants, subject to a 7-day cure period. Defendants further agreed that in the case of Defendants' voluntary abandonment of the Operating Agreements, ADQ would be entitled to terminate the Agreements effective immediately without an opportunity to cure. (*See* Sections 11.1 and 11.2 of Exs. B, C, E, F, H, J, L, and M and Sections 13.A and 13.B of Exs. D, G, I, and K.)

38.     Pursuant to the Post-Termination Obligations provisions of the Operating Agreements, Defendants agreed that they would, among other things, do the following upon termination of the Agreements:

a.     Pay all amounts due and owing to ADQ;

b.     Cease and desist from using any of ADQ's Marks, and all confusingly similar names or trademarks related to the DAIRY QUEEN® Marks or DAIRY QUEEN® restaurants; and

c.     Remove or obliterate all signage, displays, or other materials that bear any of the DAIRY QUEEN® Marks;

(*See* Section 12.1 of Exs. B, C, E, F, H, J, L, and M and Section 14.A of Exs. D, G, I, and K.)

39.     Pursuant to the Non-Compete provisions of the Operating Agreements, Defendants acknowledged and agreed that for a period of one year following the termination of the Operating Agreements, Liepman Restaurants and its principals would not directly or indirectly engage in any competitive business within a certain distance of the respective DAIRY QUEEN® restaurant. (*See* Section 12.3 of Exs. B, C, E, F, H, J, L, and M (prohibiting operation

of competing business within 2,000 meters) and Section 14.C of Exs. D, G, I, and K (prohibiting operation of competing business within 500 meters).)

40.     Pursuant to the Remedies and Dispute Resolution provisions of the Operating Agreements, Defendants agreed that ADQ is entitled to injunctive relief prohibiting Defendants' unlawful use of the Marks and enforcing their post-termination obligations under the Operating Agreements, including the non-compete provisions. (*See* Section 11 of Exs. B, C, E, F, H, J, L, and M and Section 12.B of Exs. D, G, I, and K.)

41.     Defendants also agreed pursuant to the Remedies and Dispute Resolution provisions of the Operating Agreements that ADQ is entitled to commence a civil action against Defendants in order to collect all amounts due and owing to ADQ. (*See* Section 11 of Exs. B, C, E, F, H, J, L, and M and Section 12.B of Exs. D, G, I, and K.)

42.     Defendants also agreed that that they would pay all costs and expenses, including reasonable attorneys' fees, incurred by ADQ in successfully enforcing its rights under the Operating Agreements. (*See* Section 11 of Exs. B, C, E, F, H, J, L, and M and Section 12.C of Exs. D, G, I, and K.)

43.     Under the Operating Agreements for the Mansfield, Shreveport-40291, Vivian, and De Kalb locations, Defendants agreed that, if the Operating Agreements were terminated because of their default, they are obligated to pay ADQ its anticipated and reasonably estimated lost profits in an "amount equal to two times the continuing license fees payable to [ADQ] in respect to the last twelve months of the Store's active operations . . ." (*See* Section 13.B of Exs. D, G, I, and K.)

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

A.     **Defendants' Defaults Under the Operating Agreements – Failure to Install the GRILL & CHILL® Bowtie Sign to the Benton, Bossier City, Mansfield, Many, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, and Zwolle Locations.**

44.     ADQ recently implemented a system-wide initiative that required Defendants to incorporate the GRILL & CHILL® service components—including the GRILL & CHILL® bowtie sign—at all DAIRY QUEEN® restaurants by December 31, 2016.

45.     Defendants failed to add the GRILL & CHILL® bowtie sign to the Benton, Mansfield, Many, Shreveport-40290, Shreveport-40291, Vivian, and Zwolle restaurant locations by December 31, 2016, in violation of the Operating Agreements.

46.     By letters dated February 2, 2018, ADQ notified Defendants that they were in default for failure to incorporate the GRILL & CHILL® bowtie sign at the Benton, Mansfield, Many, Shreveport-40290, Shreveport-40291, Vivian, and Zwolle locations by December 31, 2016, as required under the Operating Agreements. As part of the letters, ADQ advised Defendants that they had 90 days to purchase and install the required signage and cure the defaults. True and correct copies of the February 2, 2018, notice of default letters are attached as Exhibit N.

47.     Defendants failed to install the required signage and cure the defaults within the 90-day cure period.

48.     While ADQ had the contractual right to immediately terminate Defendants' franchise rights due to their failure to install the required signage and cure the defaults, it nevertheless agreed to allow Defendants additional time to cure the defaults until August 31, 2018. Specifically, ADQ and Defendants entered into a Mutual Cancellation and Release agreement dated June 28, 2018, ("MCR") in which the parties acknowledged the uncured

defaults by Defendants. As part of the MCR, ADQ agreed to extend the deadline to cure the defaults until August 31, 2018. A true and correct copy of the MCR is attached as Exhibit O.

49.     Defendants failed to cure the defaults by August 31, 2018.

50.     By mutual agreement between the parties, ADQ extended the deadline for Defendants to install the required signage and cure the defaults until October 15, 2018.

51.     Defendants failed to cure the defaults by October 15, 2018.

52.     Notwithstanding Defendants' failure to install the required signage and cure the defaults, ADQ allowed Defendants to continue operating their DAIRY QUEEN® restaurants under the Operating Agreements while the parties negotiated another extension to cure the defaults under the MCR. However, before the parties reached an agreement, Defendants ultimately abandoned and ceased operations at the Benton, Mansfield, Many, Shreveport-40290, Shreveport-40291, Vivian, and Zwolle locations—as set forth in Section D, *infra*. Defendants never installed the required signage and ultimately failed to cure the defaults, in violation of the Operating Agreements.

53.     Defendants also failed to add the GRILL & CHILL® bowtie sign to the Bossier City and Shreveport-40292 restaurant locations by December 31, 2016, in violation of the Operating Agreements.

54.     By letters dated August 14, 2018, ADQ notified Defendants that they were in default for failure to incorporate the "Grill & Chill" bowtie sign at the Bossier City and Shreveport-40292 locations, as required under the Operating Agreements. As part of the letters, ADQ advised Defendants that they had 60 days to purchase and install the required signage and cure the defaults. True and correct copies of the August 14, 2018, notice of default letters are attached as Exhibit P.

55.     Defendants failed to install the required signage and cure the defaults within the 60-day cure period.

**C.     Defendants' Defaults Under the Operating Agreements – Failure to Pay Past Due Fees at the Benton, Bossier City, Mansfield, Many, Shreveport-40290, Vivian, Zwolle, De Kalb, and Texarkana Locations.**

56.     By letters dated December 4, 2018, ADQ notified Defendants that they were in default for failure to pay all License Fees and Sales Promotion Fees for the Benton, Bossier City, Mansfield, Many, Shreveport-40290, Vivian, Zwolle, De Kalb, and Texarkana locations, in violation of the Operating Agreements. As part of the letters, ADQ advised Defendants that they had 15 days to pay all amounts due and cure the defaults for the Benton, Bossier City, Mansfield, Many, Shreveport-40290, Vivian, Zwolle and De Kalb locations. ADQ granted Liepman Restaurants 60 days to pay all amounts due and cure the defaults for the Texarkana location. True and correct copies of the December 4, 2018, notice of default letters are attached as Exhibit Q.

57.     Defendants failed to pay all past due fees and cure the defaults for the Benton, Bossier City, Mansfield, Many, Shreveport-40290, Texarkana, Vivian, Zwolle and De Kalb locations, as required under the Operating Agreements.

**D.     ADQ Terminated Defendants' Operating Agreements Due to Defendants' Abandonment of their DAIRY QUEEN® Restaurants and/or Failure to Cure Defaults.**

58.     Despite ADQ's repeated efforts to work with Defendants and grant them additional time to comply with their obligations under the Operating Agreements, Defendants eventually abandoned and ceased operation of the 12 DAIRY QUEEN® restaurants at issue in this case in violation of the Operating Agreements.

*Shreveport-40291 — Terminated for Abandonment Effective August 15, 2018*

59.     On or about July 25, 2018, ADQ discovered that Defendants had ceased operating their DAIRY QUEEN® restaurant at the Shreveport-40291 location.

60.     By letter dated August 15, 2018, ADQ notified Defendants that, due to their permanent closure of the restaurant and abandonment of the franchise, ADQ was exercising its right to terminate the Shreveport-40291 Operating Agreement effective August 15, 2018. A true and correct copy of the Shreveport-40291 Termination Notice is attached as Exhibit R.

### *Shreveport-40292 — Terminated for Abandonment Effective October 1, 2018*

61.     On or about September 20, 2018, ADQ discovered that Defendants had ceased operating their DAIRY QUEEN® restaurant at the Shreveport-40292 location.

62.     By letter dated October 1, 2018, ADQ notified Defendants that, due to their permanent closure of the restaurant and abandonment of the franchise, ADQ was exercising its right to terminate the Shreveport-40292 Operating Agreement effective October 1, 2018. A true and correct copy of the Shreveport-40292 Termination Notice is attached as Exhibit S.

### *Idabel — Terminated for Abandonment Effective October 8, 2018*

63.     On or about October 1, 2018, ADQ discovered that Defendants had ceased operating their DAIRY QUEEN® restaurant at the Idabel location.

64.     By letter dated October 8, 2018, ADQ notified Defendants that, due to their permanent closure of the restaurant and abandonment of the franchise, ADQ was exercising its right to terminate the Idabel Operating Agreement effective October 1, 2018. A true and correct copy of the Idabel Termination Notice is attached as Exhibit T.

### *De Kalb and Texarkana — Terminated for Failure to Cure Monetary Defaults and Abandonment Effective December 31, 2018*

65.     On or about December 31, 2018, ADQ discovered that Defendants had ceased operating their DAIRY QUEEN® restaurants at the De Kalb and Texarkana locations.

66.     At that time, Defendants were in default of the De Kalb and Texarkana Operating Agreements for failure to pay all past due fees within the required cure period.

67.     By letters dated January 4, 2019, ADQ notified Defendants that, due to their failure to cure the monetary defaults, as well as their permanent closure of the restaurant and abandonment of the De Kalb and Texarkana franchises, ADQ was exercising its right to terminate the De Kalb and Texarkana Operating Agreements effective December 31, 2018. True and correct copies of the De Kalb and Texarkana Termination Notices are attached as Exhibit U.

### *Bossier City — Terminated for Failure to Cure Sign Default, Failure to Cure Monetary Default, and Abandonment Effective January 4, 2019*

68.     On or about December 31, 2018, ADQ discovered that Defendants had ceased operating their DAIRY QUEEN® restaurant at the Bossier City location.

69.     At that time, Defendants were in default of the Bossier City Operating Agreement for failure to install the required GRILL & CHILL® bowtie sign and failure to pay all past due fees.

70.     By letter dated January 4, 2019, ADQ notified Defendants that, due to their failure to cure the sign and monetary defaults, as well as their permanent closure of the restaurant and abandonment of the franchise, ADQ was exercising its right to terminate the Bossier City Operating Agreement effective January 4, 2019. A true and correct copy of the Bossier City Termination Notice is attached as Exhibit V.

### *Benton, Mansfield, Many, Shreveport-40290, Vivian, and Zwolle — Terminated for Abandonment Effective December 31, 2018*

71.     On or about December 31, 2018, ADQ discovered that Defendants had ceased operating their DAIRY QUEEN® restaurants at the Benton, Mansfield, Many, Shreveport-40290, Vivian, and Zwolle Locations.

72.     At that time, Defendants were in default of the Vivian and Zwolle Operating Agreements for failing to pass ADQ's Cleanliness and Food Safety evaluations, as required

73.     An inspection conducted by ADQ on December 10, 2018, revealed that the Vivian and Zwolle DAIRY QUEEN® locations had numerous cleanliness and food safety issues, including evidence of rat infestation, visible mold growing in the facilities, and expired food products.

74.     By email dated January 4, 2019, ADQ notified Defendants that, due to their permanent closure of the restaurants and abandonment of the Benton, Mansfield, Many, Shreveport-40290, Vivian, and Zwolle franchises, ADQ was exercising its rights to terminate the Benton, Mansfield, Many, Shreveport-40290, Vivian, and Zwolle Operating Agreements effective December 31, 2018. A true and correct copy of the Benton, Mansfield, Many, Shreveport-40290, Vivian, and Zwolle Termination Notice is attached as Exhibit W.

75.     As part of the Termination Notices for each location, ADQ demanded that Defendants comply with all post-termination obligations, including payment of all past due fees and removal of all trademarks, signs, insignia, proprietary products and ingredients from the restaurant locations. ADQ further advised Defendants of their non-compete obligations under the Operating Agreements, which prohibits Defendants from operating a competitive business for one year after the effective termination dates.

76.     By letter dated March 21, 2019 ("Demand Letter"), ADQ reminded Defendants that their Operating Agreements were terminated and demanded past due fees in the estimated amount of $265,169.96. A true and correct copy of the Demand Letter is attached as Exhibit X.

77.     Despite their obligations to do so, Defendants have failed to pay ADQ the past due fees in the current estimated amount of $265,196.96, as required by the terms of the Operating Agreements.

**E.      Defendants Have Failed to Comply with the Post-Termination Requirements of the Operating Agreement, Are Operating Competing Businesses in Violation of Law, and Are Infringing Upon ADQ's Marks.**

78.      Following termination of the Operating Agreements, ADQ discovered that Defendants have failed to comply with their post-termination obligations by refusing to complete the de-identification requirements of the Operating Agreements, operating competing businesses at four of their former DAIRY QUEEN® franchise locations, and displaying and using DAIRY QUEEN® Marks in the operation of their competing businesses, in violation of the Agreements and federal trademark law.

79.      Accordingly, as part of the March 21, 2019, Demand Letter, ADQ notified Defendants that they had failed to perform the de-identification and other requirements of the Operating Agreements, and that their continued unauthorized use of the DAIRY QUEEN® Marks constitutes trademark infringement under federal law. Specifically, Defendants were advised that they had failed to remove all materials bearing the DAIRY QUEEN® Marks from the properties of the terminated locations, including all signs, insignia, point-of-purchase materials, paper and plastic products, and menu boards. ADQ then demanded that Defendants cease their unauthorized use of the DAIRY QUEEN® Marks and provide photographic proof that they have complied with the de-identification requirements of the Operating Agreements by April 21, 2019.

80.      Defendants did not comply with their post-termination obligations by April 21, 2019.

*Defendants Have Failed to De-Identify Their Abandoned and Permanently Closed Former DAIRY QUEEN® Restaurants — Bossier City, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, De Kalb, Texarkana, and Idabel Locations*

81.      In May 2019, a representative of ADQ visited all of Defendants' former DAIRY QUEEN® locations and observed that Defendants were still displaying and using the DAIRY

QUEEN® Marks in violation of their post-termination obligations under the Operating Agreements.

82. The representative observed that although Defendants had completely abandoned and permanently closed their former DAIRY QUEEN® restaurants at the Bossier City, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, De Kalb, Texarkana, and Idabel locations, Defendants failed to fully de-identify the restaurants. ADQ's representative took photographs of the conditions of the restaurants, which show that Defendants continue to display DAIRY QUEEN® Marks at these abandoned locations. True and correct copies of the photographs taken in May 2019 are attached as Exhibit Y.

83. A representative of ADQ again visited Defendants' former DAIRY QUEEN® restaurants at the Shreveport-40290, Shreveport-40291, and Shreveport-40292 locations on July 31 2019, and the De Kalb, and Idabel locations on August 6, 2019. ADQ's representative observed that Defendants were still displaying ADQ's Marks and had failed to fully de-identify the restaurants. True and correct copies of the photographs taken on the above-identified dates are attached as Exhibit Z.

84. On August 6, 2019, a representative of ADQ visited Defendants' former DAIRY QUEEN® restaurant in Bossier City, Louisiana, and observed that Defendants were still displaying ADQ's Marks and had failed to fully de-identify the restaurant. True and correct copies of the photographs taken at the Bossier City location on August 6, 2019 is attached as Exhibit AA.

### Defendants Are Operating Competing Businesses at Their Former DAIRY QUEEN® Restaurants — Mansfield, Many, and Zwolle Locations

85. On May 17, 2019, a representative of ADQ visited Defendants' former DAIRY QUEEN® restaurants in Mansfield, Many, and Zwolle, Louisiana, and observed that Defendants

were operating a competing restaurant named "Dairy Mark" at all locations, in violation of the non-compete provisions of the Operating Agreements. The ADQ representative observed that Defendants' competing business included on its menu burgers and soft serve treats, and other food items that directly compete with DAIRY QUEEN® restaurants. True and correct copies of the photographs taken at the Mansfield, Many, and Zwolle location are attached as Exhibit BB.

86.     A representative of ADQ again visited Defendants' former DAIRY QUEEN® restaurants at the Many and Zwolle locations on July 22, 2019, and the Mansfield location on August 6, 2019. ADQ's representative observed that Defendants were still operating their competing "Dairy Mark" businesses. True and correct copies of the photographs taken on July 22, 2019 are attached as Exhibit CC.

### *Defendants Are Using Deceptively Similar Trade Names in the Operation of Their Competing Businesses — Mansfield, Many, and Zwolle Locations*

87.     Defendants are brazenly using trade names and trademarks deceptively similar to the DAIRY QUEEN® Marks in operation of their "Dairy Mark" competing restaurants. Not only are Defendants operating their business under the name "Dairy Mark," which is deceptively similar to the DAIRY QUEEN® Marks, Defendants also offer soft serve treats called "Wizzzards." The "Wizzzards" soft serve treats are confusingly and deceptively similar to ADQ's well-known BLIZZARD® treat.

88.     The photographs taken in May and July 2019 show that Defendants are continuing to use and display DAIRY QUEEN® Marks and operating competing businesses in violation of the Operating Agreements and federal trademark law.

89.     Despite ADQ's demands, Defendants have continued to use and display DAIRY QUEEN® Marks and operate their competing businesses

90.     Defendants have no legal right to use the DAIRY QUEEN® Marks, operate their competing restaurants, or use names deceptively similar to the DAIRY QUEEN® Marks in the operation of their competing businesses.

91.     Defendants' blatant trademark infringement and failure to comply with the post-termination obligations in the Operating Agreements is causing irreparable harm and damage to ADQ because, among other things, the continuing use in commerce of the DAIRY QUEEN® Marks by Defendants outside the scope of the Operating Agreements, and without ADQ's consent, is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized or otherwise approved by ADQ. As a direct and proximate result of Defendants' actions, ADQ has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined. ADQ has no adequate remedy at law, and the only meaningful relief is an injunction enjoining Defendants from (a) unlawfully and wrongfully infringing upon the DAIRY QUEEN® Marks, (b) operating their competing businesses, and (c) violating their post-termination obligations of the Operating Agreements.

## COUNT I
## <u>FEDERAL TRADEMARK INFRINGEMENT</u>

**(Bossier City, Mansfield, Many, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, Zwolle, De Kalb, Texarkana, and Idabel Locations)**

92.     ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

93.     ADQ has registered certain of its trademarks with the United States Patent and Trademark Office.

94.     Since registering the DAIRY QUEEN® Marks, ADQ has extensively advertised the Marks in connection with its Franchise System.

95.     Defendants have no right to use the DAIRY QUEEN® Marks.

96.     Notwithstanding demands by ADQ for Defendants to cease use of the DAIRY QUEEN® Marks in violation of the Lanham Act, Defendants continue to do so.

97.     Defendants' unauthorized use and display of the Marks constitutes willful and intentional infringement of the trademarks in violation of Section 43(g) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

98.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

99.     Defendants' use in commerce of the DAIRY QUEEN® Marks without the consent of ADQ is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by ADQ.

100.    ADQ has suffered and is continuing to suffer irreparable injury.

101.    ADQ has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

102.    ADQ is entitled to immediate and permanent injunctive relief preventing Defendants from further infringement of the Marks.

103.    As a direct and proximate result of Defendants' actions, ADQ has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

## COUNT II
## <u>FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION</u>

**(Bossier City, Mansfield, Many, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, Zwolle, De Kalb, Texarkana, and Idabel Locations)**

104.    ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

105.    Defendants have infringed ADQ's rights by continuing to use and display the DAIRY QUEEN® Marks without authority. Defendants have also infringed ADQ's rights by using the confusingly similar "Dairy Mark" and "Wizzzards" trade names in the operation of their competing Dairy Mark restaurants (the former Mansfield, Many, and Zwolle locations).

106.    Due to Defendants' infringement and conduct, customers are likely to be confused and induced into patronizing Defendants' competing businesses in the belief that the goods and services are associated with the DAIRY QUEEN® Marks and Franchise system. Customers have been or are likely to be confused as to the sponsorship of the services sold by Defendants, while they continue to hold themselves out to be a franchisee, or former licensee, of the DAIRY QUEEN® Marks and Franchise System.

107.    Defendants' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a) and common law.

108.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

109.    ADQ has suffered and is continuing to suffer irreparable injury.

110.    ADQ has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

111.   ADQ is entitled to immediate and permanent injunctive relief preventing Defendants' unfair competition.

112.   As a direct and proximate result of Defendants' actions, ADQ has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

**COUNT III**
**FEDERAL TRADEMARK DILUTION**

**(Mansfield, Many, and Zwolle Locations)**

113.   ADQ hereby incorporates by reference all preceding paragraphs herein.

114.   The ADQ Marks are famous marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

115.   Defendants' infringement of ADQ's rights by using the confusingly similar "Dairy Mark" and "Wizzzards" trade names in the operation of their competing Dairy Mark restaurants, as set forth above, constitute dilution of the famous ADQ Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

116.   ADQ has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

117.   ADQ has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

118.   ADQ is entitled to preliminary and permanent injunctive relief preventing Defendants' conduct.

119.     As a direct and proximate result of Defendants' actions, ADQ has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees, plus costs, disbursements, interest and attorneys' fees.

## COUNT IV
## BREACH OF OPERATING AGREEMENT AND PERSONAL GUARANTEES —
### Failure To Comply With Post-Termination Obligations

**(Benton, Bossier City, Mansfield, Many, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, Zwolle, De Kalb, Texarkana, and Idabel Locations)**

120.     ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

121.     Defendants have failed to comply with the post-termination obligations set forth in the Operating Agreements.

122.     Defendants' failure to comply with the post-termination obligations set forth in the Operating Agreements is causing irreparable harm and damage to ADQ, is causing confusion in the marketplace, and will impair the good will associated with the DAIRY QUEEN® Marks.

123.     ADQ has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' failure to comply with the post-termination obligations are considerable and continuing, and thus not capable of ascertainment at this time.

124.     ADQ is entitled to immediate and permanent injunctive relief enforcing all post-termination obligations of the Operating Agreements.

125.     As a direct and proximate result of the Defendants' actions, ADQ has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

## COUNT V
## BREACH OF OPERATING AGREEMENT AND PERSONAL GUARANTEES —
<u>Failure To Comply With Covenant Not To Compete</u>

**(Mansfield, Many, and Zwolle Locations)**

126.    ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

127.    Defendants have failed to comply with the non-compete provisions in the Mansfield, Many, and Zwolle Operating Agreements. Defendants are operating competing businesses under the name "Dairy Mark" at the sites of their former DAIRY QUEEN® restaurants in Mansfield, Many, and Zwolle, Louisiana.

128.    Defendants' failure to comply with the non-compete provisions is causing irreparable harm and damage to ADQ, is causing confusion in the marketplace, and will impair the good will associated with the DAIRY QUEEN® Marks.

129.    ADQ has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' failure to comply with the non-compete provisions are considerable and continuing, and thus not capable of ascertainment at this time.

130.    ADQ is entitled to immediate and permanent injunctive relief enforcing the non-compete provisions in the Mansfield, Many, and Zwolle Operating Agreements.

131.    As a direct and proximate result of Defendants' actions, ADQ has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

## COUNT VI
## BREACH OF OPERATING AGREEMENT AND PERSONAL GUARANTEES —
### Failure To Pay Past Due Fees

**(Benton, Bossier City, Mansfield, Many, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, Zwolle, De Kalb, Texarkana, and Idabel Locations)**

132.    ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

133.    ADQ has performed all conditions, covenants and promises required to be performed by it pursuant to the Operating Agreements and Personal Guarantees.

134.    The Operating Agreements required Defendants to pay ADQ certain Continuing License Fees, Sales Promotion Program Fees, related fees, interest, and late fees during the term of the Operating Agreements.

135.    Pursuant to the Operating Agreements, Defendants agreed that upon termination, they would immediately pay all amounts due and owing to ADQ.

136.    Defendants breached the Operating Agreements and Personal Guarantees by failing to pay the amounts due and owing to ADQ.

137.    As a direct result of Defendants' breaches, Defendants are liable to ADQ for past due fees under the Operating Agreements and Personal Guarantees in an amount to be proven at trial (but estimated to be no less than $265,169.96), plus costs, disbursements, interest, and attorneys' fees.

## COUNT VII
## BREACH OF OPERATING AGREEMENT AND PERSONAL GUARANTEES —
### Failure To Pay Liquidated Damages

**(Mansfield, Shreveport-40291, Vivian, and De Kalb Locations)**

138.    ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

139.    ADQ has performed all conditions, covenants and promises required to be performed by it pursuant to the Operating Agreements and Personal Guarantees.

140.    The Operating Agreements required Defendants to pay ADQ certain Continuing License Fees, Sales Promotion Program Fees, related fees, interest, and late fees during the term of the Operating Agreements.

141.    Defendants caused the premature termination of the Operating Agreement by ceasing to continuously operate their DAIRY QUEEN® franchised restaurants at the Mansfield, Shreveport-40291, and Vivian locations.

142.    By virtue of Defendants' premature termination of the Operating Agreements, ADQ sustained a loss of future revenue and profit over the remainder of the Operating Agreements.

143.    ADQ has been damaged by Defendants' breach of their obligations to operate their DAIRY QUEEN® franchised restaurants, in an amount contractually agreed to by the parties.

144.    Pursuant to Section 13.B of the Mansfield, Shreveport-40291, Vivian, and De Kalb Operating Agreements, Defendants agreed that, if the Operating Agreements were terminated because of their default, they are obligated to pay ADQ its anticipated and reasonably estimated lost profits in an "amount equal to two times the continuing license fees payable to [ADQ] in respect to the last twelve months of the Store's active operations . . ."

145.    Defendants breached the Mansfield, Shreveport-40291, Vivian, and De Kalb Operating Agreements by failing to pay ADQ liquidated damages pursuant to Section 13.B of the Operating Agreements.

146.    As a direct result of Defendants' breaches, Defendants are liable to ADQ for liquidated damages in the amount of $99,476.50, plus costs, disbursements, interest, and attorneys' fees.

## COUNT VIII
## BREACH OF OPERATING AGREEMENT AND PERSONAL GUARANTEES — LOSS OF FUTURE REVENUES AND PROFITS

**(Benton, Bossier City, Many, Shreveport-40290, Shreveport-40292, Zwolle, Texarkana, and Idabel Locations)**

147.    ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

148.    ADQ has performed all conditions, covenants and promises required to be performed by it pursuant to the Operating Agreements and Personal Guarantees.

149.    The Operating Agreements required Defendants to pay ADQ certain Continuing License Fees, Sales Promotion Program Fees, related fees, interest, and late fees during the terms of the Operating Agreements.

150.    Defendants caused the premature termination of the Operating Agreement by ceasing to continuously operate their DAIRY QUEEN® franchised restaurants at the Benton, Bossier City, Many, Shreveport-40290, Shreveport-40292, and Zwolle Locations.

151.    By virtue of Defendants' premature termination of the Benton, Bossier City, Many, Shreveport-40290, Shreveport-40292, Zwolle, Texarkana, and Idabel Operating Agreements, ADQ sustained a loss of future revenue and profit over the remainder of the Operating Agreements.

152.    As a direct result of Defendants' breaches, Defendants are liable to ADQ for its loss of future revenue and profit over the remainder of Operating Agreements in an amount to be

proven at trial (but estimated to be no less than $289,943.90), plus costs, disbursements, interest, and attorneys' fees.

### COUNT IX
### BREACH OF OPERATING AGREEMENT AND PERSONAL GUARANTEES — Attorneys' Fees and Costs

### (Benton, Bossier City, Mansfield, Many, Shreveport-40290, Shreveport-40291, Shreveport-40292, Vivian, Zwolle, De Kalb, Texarkana, and Idabel Locations)

153.    ADQ incorporates by reference all preceding paragraphs as if fully set forth herein.

154.    Pursuant to the Remedies and Dispute Resolution provisions of the Operating Agreements, Defendants agreed that that they would pay all costs and expenses, including reasonable attorneys' fees, incurred by ADQ in enforcing its rights under the Operating Agreements.

155.    ADQ has commenced this action to recover amounts owed by Defendants under the Operating Agreements and Personal Guarantees. ADQ is entitled to recover its attorneys' fees and costs incurred in connection with this action, in an amount to be proven at trial.

WHEREFORE, ADQ requests the following relief:

A.    For an order ratifying and enforcing the termination of the Operating Agreements;

B.    For an award against Defendants, jointly and severally, for past due fees in an amount to be proven at trial, but in no event less than $265,169.96;

C.    For an award against Defendants, jointly and severally, for liquidated damages arising from Defendants' premature termination of the Mansfield, Shreveport-40291, Vivian, and De Kalb Operating Agreements, in an amount to be proven at trial, but in no event less than $99,476.50;

D.　　For an award against Defendants, jointly and severally, for ADQ's loss of future revenue and profit over the remainder of the Benton, Bossier City, Many, Shreveport-40290, Shreveport-40292, Zwolle, Texarkana, and Idabel Operating Agreements arising from Defendants' premature termination of the Operating Agreements, in an amount to be proven at trial, but estimated to be at least $289,943.90;

E.　　For an award against Defendants, jointly and severally, for actual damages related to its breaches of the post-termination obligations set forth in the Operating Agreements, in an amount to be proven at trial;

F.　　For an award against Defendants, jointly and severally, for actual damages related to their breaches of the non-compete provisions set forth in the, Mansfield, Many, and Zwolle Operating Agreements, in an amount to be proven at trial;

G.　　For an order enjoining Defendants, and all those acting by, through, or in concert with them, by immediate and permanent injunction, from using ADQ's trademarks, and from otherwise engaging in unfair competition with ADQ;

H.　　For an order directing Defendants, and all those acting by, through, or in concert with them, by immediate and permanent injunction, to comply with the post-termination obligations set forth in the Operating Agreements;

I.　　For an order directing Defendants, and all those acting by, through, or in concert with them, by immediate and permanent injunction, to comply with the non-compete provisions set forth in the Operating Agreements;

J.　　For an order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with the Court and serve on ADQ within fifteen (15) days after service on it of an Order of injunction, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

K.      For an award against Defendants, jointly and severally, for the damages ADQ has sustained and the profits Defendants have derived as a result of their trademark infringement and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

L.      For an award against Defendants, jointly and severally, for ADQ's reasonable and necessary costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the Operating Agreements, in an amount to be proven at trial;

M.      For an award against Defendants, jointly and severally, for ADQ's costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham Act;

N.      For an award against Defendants, jointly and severally for prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117; and

O.      For such other and further relief as the Court deems just and equitable.

DATED: August 8, 2019

**LAW OFFICES OF BRAD JACKSON**

By */s/*Brad Jackson
Brad Jackson (State Bar No. 10496460)
Cheryl Mann (State Bar No. 00794220)
3701 Turtle Creek Boulevard
Suite 12G
Dallas, TX 75219
Telephone: (214) 526-7800
Facsimile: (214) 526-1955
brad@bradjackson.com
cheryl@bradjackson.com


**GRAY, PLANT, MOOTY, MOOTY,
 & BENNETT, P.A.**

Craig P. Miller (MN ID #26961X)
*(Pro Hac Vice Admission Pending)*
Molly R. Littman (MN ID #398449)
*(Pro Hac Vice Admission Pending)*
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-3796
Telephone: (612) 632-3258
Facsimile: (612) 632-4444
craig.miller@gpmlaw.com
molly.littman@gpmlaw.com


**ATTORNEYS FOR PLAINTIFF**

GP:4827-9432-6939 v6